# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GENERAL MOTORS LLC,

    Plaintiff,

v.                                                                  Case No. 18-13105

JOHNSON CONTROLS, INC. and
JOHNSON CONTROLS BATTERY
GROUP, INC.,

    Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE COMPLAINT AND DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO FILE A SUR-REPLY

This is a contract dispute between Plaintiff General Motors LLC ("GM") and Defendants Johnson Controls, Inc. and Johnson Controls Battery Group, Inc. (collectively, "JCI"). The contracts at issue are three settlement agreements the parties entered; the parties contest JCI's reimbursement obligations to GM under these agreements. Before the court is GM's Motion for Judgment on the Complaint as to liability. (Dkt. #20.) JCI has filed a response (Dkt. #25), and GM has filed a reply (Dkt. #28). Additionally, Defendants have filed a Motion for Leave to File a Sur-Reply. (Dkt. #30.) Plaintiff has filed a response opposing this motion (Dkt. #31), and Defendants have filed a reply (Dkt. #32). The court has reviewed the briefing and determines that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained below, the court will deny Plaintiff's Motion for Judgment on the Complaint, rendering Defendants' Motion for Leave to File a Sur-Reply moot.

## I. BACKGROUND

The following facts are undisputed. For many years, JCI supplied GM with automotive batteries that were incorporated into GM's vehicles. (Dkt. #19, PageID 163.) These vehicles included Chevrolet, Buick, GMC, and Cadillac brand vehicles for GM's Model Years 2012 through 2017. (*Id.*, PageID 164.) GM provided a consumer warranty for these vehicles of 36,000-miles/3-years or 50,000-miles/4-years depending on the brand. (*Id.*) Some of the JCI automotive batteries led to warranty claims from GM consumers, and JCI and GM entered into three Settlement Agreements related to these costs. (Dkt. ##1-2, 1-3, 1-4.) The Agreements were executed in 2015, 2016, and 2017 and covered vehicles from Model Years 2014, 2015, and 2016, respectively. (*Id.*) The Agreements provided that JCI would contribute a lump sum to GM for the battery-related warranty costs it had incurred up to a specific date and would pay a percentage of the warranty costs incurred thereafter on a quarterly basis. The percentage was agreed to by GM and JCI and varied slightly from year to year—35.7% for the 2014 Model Year, 35.4% for the 2015 Model Year, and 36.4% for the 2016 Model Year. (*Id.*)

On October 3, 2018, GM filed a complaint alleging that JCI breached the Settlement Agreements by failing to fully reimburse GM for its warranty costs, which GM contends are coextensive with the consumer warranty of three or four years. (Dkt. #1.) JCI filed an answer and counterclaim, stating that JCI repeatedly informed GM that it would not cover warranty costs incurred after a vehicle's first 12 months-in-service; that GM billed JCI according to this understanding from 2013 to 2017; and that GM requested reimbursement for claims outside of the first 12 months-in-service for the first time in March 2018. (Dkt. #13, PageID 113.) Additionally, JCI alleges GM breached the

Settlement Agreements by charging JCI a mark-up or surcharge on the warranty costs rather than the actual costs. (*Id.*, PageID 115.) The parties demand a jury trial. The court has delayed issuing a scheduling order and suspended formal discovery deadlines pending the resolution of this motion. (Dkt. #26.)

## II. STANDARD

A party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). In reviewing such a motion, the court takes the well-pleaded allegations of the non-moving party as true and draws all reasonable inferences in its favor. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (internal citations omitted). Exhibits attached to the motion may be considered "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 695 (6th Cir. 2018) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). "A Rule 12(c) motion also requires an examination of the counterclaims, and answers." *Metal Partners, LLC v. L & W Corp.*, No. 06-14799, 2008 WL 11355575, at *2 (E.D. Mich. April 11, 2008) (citing *Baxter Travenol Labs., Inc. v. LeMay*, 536 F. Supp. 247, 250 (S.D. Ohio 1982)).

Judgment on the pleadings is appropriate under Rule 12(c) "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)). Therefore, "when the plaintiff moves for judgment on the pleadings, the motion should be granted if, 'on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a

matter of law.'" *Lowden v. Cty. of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010) (internal citations omitted). In other words, "for the plaintiff to prevail on a Rule 12(c) motion, the pleadings must conclusively establish all elements for which plaintiff holds the burden and that no defense is possible." Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* Rule 12 (2019 ed.). "[I]f the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (1969)).

"The obvious purpose of Rule 12(c) of the Rules of Civil Procedure is to save time and expenses in cases wherein the ultimate facts are not in dispute." *McFarland v. Wells Fargo Home Mortg., Inc.*, No. 05-673, 2006 WL 2830025, at *2 (W.D. Mich. Sept. 29, 2006) (quoting *Ulen Contracting Corp. v. Tri-County Elec. Coop.*, 1 F.R.D. 284, 285 (W.D. Mich. 1940)). "The entry of judgments upon the pleadings in doubtful or close cases will not accomplish that end." *Ulen Contracting Corp.*, 1 F.R.D. at 285.

### III. DISCUSSION

Plaintiff's motion seeks judgment as to liability on its breach of contract claim against JCI. For Plaintiff to prevail on this motion, it must establish a breach of contract under Michigan law. In determining whether GM is entitled to judgment on the pleadings, the court takes the well-pleaded allegations of JCI as true and draws all reasonable inferences in its favor.

The parties dispute the duration of JCI's warranty-reimbursement obligations under the Settlement Agreements. GM argues that the Agreements are unambiguous

4

and establish the duration of JCI's warranty costs obligation as fully extensive with GM's consumer warranty (that is, three or four years of warranty). (Dkt. #20, PageID 196.) JCI disagrees and contends it is responsible for only warranty costs arising in the first year. To that end, JCI argues that the agreements do not address the duration of the obligation, are not a complete and final integration of their agreement, and that documentary evidence and the parties' course of conduct contradicts GM's claim of the warranty duration. (Dkt. #25, PageID 250–51.) JCI also argues that judgment on the pleadings is precluded because of its denials, affirmative defenses, and counterclaim. (*Id.*) The court will consider the arguments in turn.

"The initial question whether contract language is ambiguous is a question of law." *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 496 (Mich. 2001) (citing *Farm Bureau Mut. Ins. Co. v. Nikkel*, 596 N.W.2d 915, 919 (1999)). To determine if the contract is ambiguous, the court looks to the language of the Settlement Agreements. Under the title "Cost Recovery," the 2015 Agreement states:

> To settle all warranty claims paid by GM for the 2014 Model Year vehicles produced in North America identified above and relating to the Labor Codes occurring on and after July 17, 2015, Supplier agrees to pay GM 35.7% of all costs and expenses to GM arising out of or associated with the Warranty Cost Recovery, including without limitation, the repair costs and expenses. Supplier authorizes GM to debit Supplier's account each calendar year quarter to recover any amounts due GM hereunder. The quarterly debits shall continue until all warranty claims are paid.

(Dkt. #1-2, PageID 19.) The 2016 and 2017 Agreements are nearly identical in their language, except for the dates and percentages. (Dkt. #1-3, PageID 24; Dkt. #1-4,

5

PageID 29.) There is no mention in this provision of the Warranty Cost Recovery being limited to costs incurred through the first 12 months-in-service, nor is there a specification that it covers 36,000-miles/3-years or 50,000-miles/4-years depending on the brand of the vehicle.

GM maintains that this specification is found in its Terms and Conditions, which it argues is incorporated by the following provision in each Agreement: "this Settlement Agreement is not intended to modify the terms and conditions of the Purchase Contract, including GM's general terms and conditions of purchase, which terms and conditions remain in full force and effect." (Dkt. #1-2, PageID 20; Dkt. #1-3, PageID 25; Dkt. #1-4, PageID 30.) The Purchase Contract is not attached to Plaintiff's complaint or any other pleading. Plaintiff did attach to its complaint, however, two versions of its terms and conditions. The 2014 version of GM's General Terms and Conditions has a section entitled "Product Warranty; Warranty of Performance," which states:

> Unless otherwise set forth in this Contract, the duration of the warranty provided by Seller to Buyer for the goods will begin on the date of receipt of the goods by Buyer and end on the later of (a) the date of expiration of any warranty period provided under applicable law for the goods, (b) expiration of any warranty applicable to the goods provided by Buyer to Buyer's end customer for the vehicle into which the goods are incorporated, or (c) the expiration of any specific warranty period or performance standard provided in any document incorporated by reference into the Contract, including in Buyer's specifications or quality standards.

(Dkt. #1-6, PageID 43–44.) Similarly, the 2011 General Terms and Conditions contains a "Warranty" section stating: "The warranty period shall be that provided by applicable law, except that if Buyer offers a longer warranty to its customers for goods installed on vehicles, such longer period shall apply." (Dkt. #1-5, PageID 35.)

6

While GM would have the court determine that the contract is unambiguous based on the language of the Terms and Conditions, the court is wary to do so without having the full contract before it—including the conspicuously absent Purchase Contracts. Indeed, "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity." *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). "Instead, contracts must be 'construed so as to give effect to every word or phrase as far as practicable.'" *Id.* (quoting *Hunter v. Pearl Assur. Co.*, 291 N.W. 58, 59 (Mich. 1940)). The court will therefore refrain from making a determination on the question of ambiguity at this time.

Moreover, JCI argues that extrinsic evidence is necessary for the court to determine whether the Settlement Agreements were fully integrated and meant to be a complete expression of the parties' agreements regarding warranty cost reimbursement. (Dkt. #25, PageID 267.) According to JCI's answer and counterclaim, both parties understood that JCI was responsible only for warranty claims arising in a vehicle's first 12 months-in-service. (Dkt. #13, PageID 109.) The court acknowledges that "the prerequisite to the application of the parol evidence rule . . . [is that] the parties intended the written instrument to be a complete expression of their agreement as to the matters covered." *NAG Enters., Inc. v. All State Indus., Inc.*, 285 N.W.2d 770, 771 (Mich. 1979). "Extrinsic evidence of prior or contemporaneous agreements or negotiations is admissible as it bears on this threshold question of whether the written instrument is

7

such an 'integrated' agreement." *Id.*[1] This threshold question raises issues of fact that preclude an entry of judgment on the pleadings.

Finally, JCI's answer raises several affirmative defenses to the breach of contract claim. Among them is estoppel, which is based on allegations of GM representing to JCI that its reimbursement obligations were limited to warranty claims arising in first 12 months-in-service, JCI reasonably relying on this, and JCI being prejudiced as a result. (Dkt. #13, PageID 21; Dkt. #25, PageID 273.) JCI attaches documents to its answer and counterclaim that support this defense. Because JCI has pleaded an affirmative defense and facts underlying it that, if proved, would defeat GM's claim, GM is unable to conclusively establish its breach of contract claim on the pleadings.

## IV. CONCLUSION

The court will deny Plaintiff's motion, aware that "a rule 12(c) motion for judgment on the pleadings, theoretically, is directed toward a determination of the substantive merits of the controversy, and consequently, such a motion should only be granted where it is clear that the merits of the controversy can be fairly and fully decided in this

---

[1] In a footnote, Plaintiff states that *NAG Enterprises, Inc. v. All State Industries, Inc.* is "old" and does not "reflect[] how Michigan law has evolved." (Dkt. #28, PageID 300 n.7.) The court does not disregard precedent that is old so long as it is still good. Plaintiff does not suggest that the case has been overturned. Indeed, the case has been cited for this exact point of law in multiple more recent cases. *See, e.g., Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 315 n.2 (6th Cir. 2010) (applying Michigan law); *Hamade v. Sunoco Inc. (R & M)*, 721 N.W.2d 233, 248 (Mich. Ct. App. 2006); *Cook v. Little Caesar Enters., Inc.*, 210 F.3d 653, 656 (6th Cir. 2000) (applying Michigan law); *Farm Credit Servs. of Mich.'s Heartland, P.C.A. v. Weldon*, 591 N.W.2d 438, 442 (Mich. Ct. App. 1998).

Plaintiff also claims that the contract in *NAG Enterprises* "lacked language, like here, precluding consideration of inconsistent evidence." (Dkt. #28, PageID 300 n.7.) The court distinguishes, however, between "language . . . precluding consideration of inconsistent evidence" and an integration clause. Only the latter is relevant to the threshold consideration of whether an agreement in fully integrated.

summary manner." *Sage Intern, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 383 (E.D. Mich. 1982) (citing 5 Wright & Miller, *supra*, § 1369). Since the pleadings do not clearly establish that GM is entitled to judgment and given the large amounts at issue, the court will avoid rushing to judgment and allow the discovery process to shed light on the central issue of liability. Accordingly,

IT IS ORDERED that Plaintiff's Motion for Judgment on the Complaint (Dkt. #20) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Leave to File a Sur-Reply (Dkt. #30) is DENIED AS MOOT.

As contemplated by the court's January 18, 2019 order, a scheduling order will now issue.

<u>s/Robert H. Cleland              /</u>
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: February 26, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 26, 2019, by electronic and/or ordinary mail.

<u>s/Lisa Wagner                    /</u>
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-13105.GENERALMOTORS.JudgmentonComplaint.docx